UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SUSAN L. DRULEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:17-cv-00462-DML-TWP |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Decision on Complaint for Judicial Review

Plaintiff Susan L. Druley applied in September 2014 for Disability Insurance

Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under

Titles II and XVI, respectively, of the Social Security Act, alleging she has been

disabled since September 3, 2014. Acting for the Commissioner of the Social

Security Administration following a hearing on August 16, 2016, administrative law

judge Kimberly Sorg-Graves issued a decision on October 27, 2016, that Ms. Druley

is not disabled. The Appeals Council denied review of the ALJ's decision on

January 24, 2017, rendering the ALJ's decision for the Commissioner final. Ms.

Druley timely filed this civil action under 42 U.S.C. § 405(g) for review of the

Commissioner's decision. The parties consented to the magistrate judge conducting

all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. §

636(c) and Fed. R. Civ. P. 73.

Ms. Druley asserts that the ALJ erred in her analysis of whether she had acquired work skills appropriately transferable to the three jobs the ALJ found she was capable of performing. Therefore, argues Ms. Druley, the decision at step five is not supported by substantial evidence.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Druley's specific assertions of error.

### Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Ms. Druley is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C.

---

[1]  Two programs of disability benefits are available under the Social Security Act:  DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria. 42 U.S.C. § 1381 *et seq.*  The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits.  For SSI benefits, materially identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

§ 423(d)(2)(A). The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy

3

that the claimant can perform, based on her vocational profile (age, work experience, and education) and RFC; if so, then she is not disabled.

The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her vocational profile and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the

evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

<u>Analysis</u>

## I.     <u>The ALJ's Sequential Findings</u>

Ms. Druley was born in 1958, was 55 years old as of her alleged disability onset date, and was 58 years old at the time of the ALJ's decision.  In the fifteen years before the administrative hearing, Ms. Druley had worked (1) a few months in 2002 doing insurance billing work for a nursing home, (2) a couple of months in 2004 or 2005 for a catering company, and (3) nearly 10 years as a customer service supervisor for Target, from 2005 though September 2014.  In her job at Target, Ms. Druley handled complaints by customers, assisted cashiers with problems with their registers, handled supervisor complaints by cashiers, worked in the cash office, set up cash drawers for shifts, and closed out cash drawers at the end of shifts.  R. 48-50.  She also ran a cash register, used a computer, counted money from the cash drawers and placed the cash in a safe, and filled out bank deposits.  R. 249, 310.  The job required walking around about 80% of the workday, and Ms. Druley left that employment because she could no longer perform the physical requirements of the work.  *See* R. 48-50.  Ms. Druley testified that she receives long-term disability benefits through a Target employee benefits program and that after she stopped working, she also received some short-term benefits and the payment of vacation benefits.  (R. 51).

At step one, the ALJ found Ms. Druley had "continued to work part-time at Target" after her alleged onset date, but the earnings were not at the substantial gainful activity level. (R. 20). At steps two and three, the ALJ identified certain severe impairments (osteoarthrosis consisting of mild inflammation of the AC joint of the left shoulder and left ankle, obesity, lupus, and fibromyalgia), but found that no listing was met or medically equaled.

The ALJ next determined Ms. Druley's residual functional capacity (RFC) for purposes of conducting the required analysis at steps four and five. She decided Ms. Druley can perform sedentary work, in that she can lift/carry/push/pull 10 pounds occasionally and less than 10 pounds frequently, sit six hours of an 8-hour work day, and stand or walk two hours of an 8-hour work day. She also has certain postural limitations. With this RFC, the ALJ found Ms. Druley cannot perform her past relevant work because its demands exceed her functioning.

At step five, the ALJ first concluded, based on the testimony of a vocational expert, that Ms. Druley's job at Target is appropriately classified under the DOT as "cashier supervisor" (DOT #211.137-010). She then considered the VE's testimony about whether Ms. Druley had acquired from that work skills that would transfer to sedentary work. The VE answered that she had. He stated that her cashier skills and customer service skills would transfer to sedentary occupations; he did not address the transferability of supervisory skills. The VE explained that "Ms. Druley has had extensive experience in money handling and working with cashiers in different kinds of situations, and those skills would transfer to other sedentary

cashier positions." Based on the VE's testimony and other evidence in the record, the ALJ found that Ms. Druley had acquired certain skills that would transfer to sedentary work: cashiering, money handling, customer service, bank deposits, and related tasks. (R. 32). She ultimately determined, again based on the VE's testimony, that with Ms. Druley's vocational profile (including transferable skills) and RFC, there are significant numbers of job in Indiana that Ms. Druley can perform: Cashier I (DOT #211.362-010), Gaming Cage Worker (DOT #211.462-022), and Check Cashier (DOT #211.462-026). Accordingly, the ALJ determined at step five that Ms. Druley is not disabled.

## II. Ms. Druley's Assertion of Error

Ms. Druley raises one assertion of error. She contends the ALJ erred in finding that she had acquired work skills that are transferable to other jobs existing in the economy which would require little, if any, vocational adjustment. She faults the ALJ for allegedly failing "to conduct a proper analysis" of skills transferability. As explained below, the court determines that the ALJ's decision regarding transferability of skills is supported by substantial evidence. Therefore, the Commissioner's decision must be affirmed.

The parties agree, and the court finds, that the issue of whether work skills learned in semi-skilled or skilled past relevant work are transferable is a determination reserved to the ALJ. *See* Social Security Ruling 82-41. In making this determination, the ALJ must identify in her decision the acquired work skills and the specific occupations to which those skills are transferable. *Id.* In addition,

if the claimant is over age 55 and is limited to sedentary work (as the ALJ's RFC limited Ms. Druley), then the ALJ can conclude that the skills are transferable only if the work the ALJ finds she can perform "is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." *Id.* *See also* 20 C.F.R. § 404.1568(d)(4).

There are two bases for Ms. Druley's argument that the ALJ failed "to conduct a proper analysis" of skills transferability. First, she alleges that the ALJ's description of the transferable skills Ms. Druley allegedly acquired is either inaccurate or, in one case, insufficiently specific. Second, she alleges that there is not substantial evidence to support the conclusion that little, if any, vocational adjustment would be necessary for Ms. Druley to be capable of the sedentary jobs of Cashier I, Gaming Cage Worker, or Check Cashier.

As to the first matter, the ALJ identified the transferable skills as "cashiering, money handling, customer service, bank deposits, and related tasks." Ms. Druley argues that there is no evidence that she had skills with "bank deposits" and the reference to "related tasks" is insufficiently specific. The court rejects these arguments because the ALJ's identification of these skills is based on unchallenged evidence provided by vocational experts and evidence from Ms. Druley herself. She provided information to the Agency on October 22, 2014, that her job included counting out money from cash registers and filling out the bank deposits, even though she herself did not physically go to the bank. (R. 310). The record also

contains an evaluation by vocational specialist P. Fox, prepared October 30, 2014 (R. 256), who opined about Ms. Druley's transferable skills based on the information in the administrative record that Ms. Druley had provided. That opinion, which the ALJ was entitled to rely upon, identifies the transferable skills as "cashiering, customer service, bank deposits, and related tasks." The testifying vocational expert also identified Ms. Druley's money handling as a skill she had acquired through her years of working at Target. Thus, substantial evidence supports the ALJ's identification of the transferable skills.

As to the second alleged problem with the ALJ's analysis—whether she appropriately determined that Ms. Druley would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry, to perform the jobs identified by the testifying vocational expert—the court also finds that the ALJ's decision is supported by substantial evidence. Although the VE stated that the new jobs were "more in a business type of setting" than the retail setting Ms. Druley worked at Target, the VE also stressed that the new jobs and the Target job share "primarily" the money handling skill and they all involve customer contact. (R. 66). The Commissioner points out (and Ms. Druley does not contest; she did not file a reply brief) that she, essentially, had acquired cashiering and customer-contact skills and the three cashier jobs identified by the VE were less complex versions of the cashiering job that Ms. Druley had done for years. SSR 82-41 explains that there are some job skills that have such "universal applicability" that they easily transfer across industries "with very little, if any,

vocational adjustment." Transferability is probable where the transferee job requires the same or a lesser degree of skill, similar tools or machines, and similar processes or services. *Id.* The ALJ relied on the VE to find that Ms. Druley's cashiering, money handling, and customer contact skills were transferable and to conclude that there was sufficient similarity in jobs that little, if any, vocational adjustment, would be necessary. That finding is logical. As the Commissioner points out, the transferee cashier jobs are at a lesser skill level and would use the same machines (cash registers or computers) and processes or services (making change and dealing with customers).

Moreover, it is significant that Ms. Druley did not challenge the VE's testimony. Her attorney asked no questions about skills transfer or the transferee jobs. Indeed, as her attorney explained at the hearing, her theory for disability was that "she'd be excessively absent. She would have some reaching restrictions with her elbows and shoulders, and just generally would not be able to sustain full-time work due to the severity of her lupus." (R. 69). Under the circumstances, where—based on uncontradicted expert vocational evidence—the ALJ clearly identified the transferable skills and the jobs to which they transfer, and concluded that the jobs are so similar to the past work that little, if any, vocational adjustment would be necessary, the court finds that substantial evidence supports the Commissioner's decision that Ms. Druley was not disabled.

## **Conclusion**

For the foregoing reasons, the court AFFIRMS the Commissioner's decision that Ms. Druley was not disabled.

So ORDERED.

Dated:  March 20, 2018

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system